## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RALPHE ARMSTRONG,

        Plaintiff,

v.

                                        Case No. 09-CV-11704

EAGLE ROCK ENTERTAINMENT, INC.,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S "MOTION FOR JUDGMENT ON THE PLEADINGS, MOTION FOR SUMMARY JUDGMENT IN THE ALTERNATIVE"

Pending before the court is a "Motion for Judgment on the Pleadings, Motion for Summary Judgment in the Alternative," filed by Defendant Eagle Rock Entertainment, Inc. ("Eagle Rock") on July 2, 2009. Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion.

## I. INTRODUCTION

The subject of this dispute is a DVD entitled, "Mahavishnu Orchestra, Live at Montreux, 1984, 1974," which includes video and still pictures of Plaintiff Ralphe Armstrong, a professional bass player and a member of the Mahavishnu Orchestra in 1974. On April 6, 2009, Armstrong filed an action against Eagle Rock in the Oakland County Circuit Court, asserting claims for common law right of publicity (Count I), false designation of origin under Section 43(a) of the Lanham Act (Count II), common law right of privacy (Count III), and unjust enrichment (Count IV). On May 5, 2009,

Defendant filed a notice of removal in this court, and subsequently filed a "Motion for Judgment on the Pleadings, Motion for Summary Judgment in the Alternative."  The parties stipulated to a dismissal of Count I and Count IV, and on August 27, 2009, a "Stipulated Order of Partial Voluntary Dismissal" was issued dismissing these counts with prejudice.  Accordingly, only the claim for "false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))" and the claim for violation of Plaintiff's right to privacy "stemming from the Defendant's asserted misappropriation" of Plaintiff's "name, image, and likeness" remain before the court.  (Pl.'s Resp. at 1.)

## II.  BACKGROUND

Plaintiff is a professional musician, playing both the upright bass and bass guitar. (Armstrong Aff. ¶ 4.)  He has an extensive music catalog, which includes working with other musicians and groups on at least thirty-eight separate works.  (*Id.* ¶ 9.)  He has performed, recorded, and collaborated with many well-known artists, including Aretha Franklin, B.B. King, Carlos Santana, Curtis Mayfield, Herbie Hancock, Sting, and The Temptations, among others.  (*Id.* ¶ 10.)  He has served as a spokesman and appeared in advertisements for Gibson, a manufacturer of musical instruments.  (*Id.* ¶ 12.) Throughout his career, Armstrong has received many awards, including a "Gold Record" award from the Recording Industry Association of America (Pl.'s Ex. F), a "Special Tribute" from the Michigan legislature (Pl.'s Ex. G), and induction into the Gibson Guitar Hall of Fame (Pl.'s Ex. E).

In 1974, at the age of seventeen, Armstrong played the bass guitar with Mahavishnu Orchestra at the Montreux Jazz Festival in Switzerland.  (Armstrong Aff. ¶ 6.)  The Mahavishnu Orchestra is a "world-renown[ed] jazz-rock fusion group" led by

2

John McLaughlin, and Armstrong played with the group from 1974 to 1976.  (*Id.*)  The

Montreux Jazz Festival, "a prestigious gathering of eclectic musical artists," has been

held in Switzerland each year since 1967.  (Def.'s Mot. at 1).  "Each annual Montreux

Jazz Festival since 1967 has been recorded by Montreux Sounds or its predecessor."

(Roy Aff. ¶ 6.)  Armstrong, however, alleges that he "did not consent to any audio or

video recordation of [his] person while performing, engaging, or participating in the 1974

Montreux Performance."  (Armstrong Aff. ¶ 6.)  Further, he alleges that he "did not sign

or agree to any type of consent document or arrangement relating to the recordation."

(*Id.*)  Armstrong does admit to seeing the video cameras, but he states that he did not

think he was being recorded and thought that he was "only being simulcast on other

screens at the Montreux Festival and possibly televised on Swiss Television."  (*Id.* ¶ 7.)

Eagle Rock produces and sells a two-disc DVD, entitled "Mahavishu Orchestra[,]

Lilve at Montreux[,] 1984[,] 1974," which "depicts performances by the 'Mahavishnu

Orchestra' musical group at the Montreux Jazz Festivals held in 1974 and 1984." (Roy

Aff. ¶ 3.)  Montreux Sounds SA owns the performance copyrights.  (Def.'s Ex. A.)  "The

owners of the copyright to the recordings on the DVD Set have given Eagle Rock

permission to publish those recordings."  (Roy Aff. ¶ 4.)  Armstrong appears on the

1974 disc playing bass guitar with the Mahavishnu Orchestra.  (*Id.* ¶ 5.)  He also

appears on a photograph on the back cover of the DVD and in two photographs in the

"liner notes contained within the DVD set packaging."  (*Id.* ¶ 7.)  The back cover of the

DVD, above the picture containing Armstrong, states,

> Founded in 1967, the MONTREUX JAZZ FESTIVAL has established itself
> as one of the most prestigious annual music events in the world.  The
> extraordinary list of artists who have played there is drawn from across the

3

musical spectrum and from around the world. Now, with the consent of the
festival and artists, Eagle Vision is making these concerts available on
DVD for the first time.

(Def.'s Ex. A.)  Armstrong denies ever giving his consent to this DVD and brought an

action seeking an injunction and an accounting of profits and other damages.

(Armstrong Aff. ¶ 8.)  Eagle Rock filed a motion for judgment on the pleadings and/or

summary judgment based on the First Amendment and the Copyright Act.

### III.  STANDARD[1]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when

there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary

judgment, the court must view the evidence in the light most favorable to the non-

moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United*

*States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its

burden of showing that the pleadings, depositions, answers to interrogatories,

admissions and affidavits in the record, construed favorably to the non-moving party, do

not raise a genuine issue of material fact for trial, entry of summary judgment is

appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but

rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*,

---

[1]Both parties submitted and refer to material outside of the pleadings.
Accordingly, the court will treat this motion as one for summary judgment under Rule
56.  *See* Fed. R. Civ. P. 12(d).

4

342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## IV.  DISCUSSION

### A.  Common Law Right to Privacy

The common-law right to privacy encompasses four types of invasion of privacy.
*Battaglieri v. Mackinac Center for Public Policy*, 680 N.W.2d 915, 919 (Mich. Ct. App.
2004).  The type of invasion-of-privacy claim brought by Plaintiff is  "[a]ppropriation, for
the defendant's advantage, of the plaintiff's name or likeness."[2]  *Id.*  Unlike the other
privacy torts, "appropriation does not require falsity."  *Bowens v. Aftermath
Entertainment*, No. 250984, 2005 WL 900603, at *1 (Mich. Ct. App. Apr. 19, 2005).
Also, unlike the other privacy torts, the right protected by the appropriation tort is not
"plaintiff's right 'to be let alone.'"  *Arnold v. Treadwell*, No. 283093, 2009 WL 2136909,
at *4 (Mich. Ct. App. July 16, 2009).  Instead, the right protected "'is in the nature of a
property right,' which the tort recognizes as being violated whenever 'the defendant
makes use of the plaintiff's name or likeness for his own purposes and benefit.'"
*Battaglieri,* 680 N.W.2d at 919 (quoting Restatement (Second) of Torts § 652C, cmt. b).
"[A]ny unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is
actionable if that use results in a benefit to another."  *Id.*   Based on these principles,
Michigan courts have set forth two elements that a plaintiff must prove for an
appropriation claim: "(1) that [Plaintiff] has a pecuniary interest or significant commercial
value in [his] identity, and (2) that the [Defendant] engaged in commercial exploitation of
[Plaintiff's] identity."  *Arnold*, 2009 WL 2136909, at *4.  However, the First Amendment
limits appropriation liability in many instances.  *Battaglieri,* 680 N.W.2d at 919.

### 1. Pecuniary Interest or Significant Commercial Value in Identity

---

[2]Invasion of privacy-misappropriation is also known as "right of publicity."  *Ruffin-Steinbeck v. dePasse*, 82 F. Supp. 2d 723, 728 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457
(6t Cir. 2001).  The two terms will be used interchangeably.

In order to establish a pecuniary interest or significant commercial value in his identity, Plaintiff must show that "'there is value in associating an item of commerce with [his] identity.'"  *Arnold*, 2009 WL 2136909, at *5 (quoting *Hauf v. Life Extension Foundation*, 547 F. Supp. 2d 771, 778 (W.D. Mich. 2008)).  The use of "plaintiff's identity, however, may be sufficient evidence of commercial value."  *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000).  In addition, it is not necessary that Plaintiff be "a national celebrity to demonstrate significant commercial value."  *Arnold*, 2009 WL 2136909, at *5.  For example, in *Arnold*, the court held there was a genuine issue of material fact regarding whether Diamalynn Arnold had a pecuniary interest or significant commercial value in her identity.  *Id.*  In addition to evidence that the defendants posted Arnold's photographs on a website and submitted them to a magazine,  the court based its decision on evidence "that plaintiff has contracted to model clothing in a fashion show, to play an extra in a music video, and to work as an exotic dancer."  *Id.*

In the present case, Plaintiff has presented sufficient evidence to establish a genuine issue of material fact with regard to Plaintiff having a pecuniary interest or significant commercial value in his identity.  Most importantly, Plaintiff has presented evidence that his identity has been used in the past to endorse products, including serving as a spokesman for Gibson.  (Armstrong Aff. ¶ 12; Pl.'s Ex. E.)  Moreover, Plaintiff has presented evidence of an extensive professional musical career, being credited on over thirty-eight works and playing with many world-renowned artists.  (Armstrong Aff. ¶¶ 9, 10; Pl.'s Ex. B.)  He has received a number of awards, including a "Gold Record" award from the Recording Industry Association of America (Pl.'s Ex. F), a

7

"Special Tribute" from the Michigan legislature (Pl.'s Ex. G), and induction into the Gibson Guitar Hall of Fame (Pl.'s Ex. E)  Based on this evidence, there is sufficient evidence for a jury to conclude that Plaintiff has a pecuniary interest or significant commercial value in his identity.  *See Arnold*, 2009 WL 2136909, at *5.

### 2. Exploitation by Defendant

In order to show the second element, Defendant must use the Plaintiff's likeness for his own benefit and the use must be unauthorized.  *See Battaglieri,* 680 N.W.2d at 919.  A party may waive the right to privacy by authorizing the action.  *Lewis v. LeGrow*, 670 N.W.2d 675, 688 (Mich. Ct. App. 2003).  A waiver can be implied, but it must show a "clear, unequivocal, and decisive act of the party showing such a purpose."  *Id.* "Generally, the scope of a waiver or consent will present a question of fact for the jury, unless reasonable minds cannot disagree that the plaintiffs consented to the activity about which they complain."  *Id.* (citations omitted).

The parties have focused on whether or not Plaintiff consented to being recorded at the Montreux Jazz Festival in 1974.  Defendant points to numerous instances on the DVD where "[l]arge, 1970s-era television cameras were prominently visible."  (Def.'s Mot. at 15.)  Plaintiff acknowledges that he saw electronic equipment, but he denies that he knew he was being recorded.  (Armstrong Aff. ¶ 7.)  Instead, he contends that he believed that the performance was "only being simulcast on other screens at the Montreux Festival and possibly televised on Swiss Television."  (*Id.*)  Based on these facts, reasonable minds cannot disagree that Plaintiff consented to being recorded. See *Lewis*, 670 N.W.2d at 688.

8

But even so, Defendant has not pointed to any binding authority that states once a person has consented to being recorded, that person has also consented to any further use of the recording. Here, the scope of Plaintiff's consent would constitute a question of fact for the jury as Plaintiff denies consenting to the production of the DVD. However, as a matter of law, the First Amendment and Copyright Preemption foreclose submitting Plaintiff's appropriation claim to the jury.

### 3. The First Amendment

"[T]he First Amendment bars appropriation liability for the use or likeness in a publication that are newsworthy or of legitimate public concern." *Battaglieri,* 680 N.W.2d at 919. The First Amendment privilege does not only extend to news in the sense of current events, but "extends far beyond to include all types of factual, educational, and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." *Nichols v. Moore*, 334 F. Supp. 2d 944, 956 (E.D. Mich. 2004). For example, in *Nichols*, the court held that the First Amendment barred Plaintiff James Nichols' appropriation claim based on an interview of Nichols that was recorded by Michael Moore and included in a Moore film, "Bowling for Columbine," because it was relevant to the Oklahoma City bombing. *Id.* at 956-57. "Works of artistic expression such as movies, plays, books, and songs" are protected by the First Amendment. *Id.* In addition, the First Amendment privilege applies even if the material is published to make a profit. *Bowens*, 2005 WL 900603, at *8. For example, in *Bowens*, a DVD of a "national gangster rap concert tour" was privileged by the First Amendment against appropriation claims by those taped and included in the DVD without their permission because the "Up in Smoke Tour" and Detroit officials' actions

9

regarding the tour were "newsworthy or of legitimate public concern." *Id.* Whether the privilege applies "depends on the character of the publication," and is a determination that is made by the court as a matter of law. *Battaglieri,* 680 N.W.2d at 919.

The First Amendment privilege against appropriation liability, though, is not unlimited. *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977). The media is not privileged to "broadcast a performer's entire act without his consent." *Id.* at 575. In *Zacchini*, a news station broadcast the plaintiff's fifteen-second human cannonball act even though plaintiff asked the reporter not to film the performance. *Id.* at 563-64. The Court held that plaintiff's appropriation claim was not foreclosed by the First Amendment because it was "an attempt to broadcast or publish an entire action for which the performer ordinarily gets paid." *Id.* at 574.

Based on this precedent, the court concludes that the First Amendment bars liability for the use of Plaintiff's picture on the DVD cover and in the liner notes. However, under *Zacchini*, the First Amendment does not protect the use of Defendant's performance on the DVD because it included Plaintiff's entire act and was allegedly published without his consent.

Overall, the DVD and packaging at issue in this case is a "work of artistic expression." *See Nichols*, 334 F. Supp. 2d at 956. It is not disputed that the Montreux Jazz Festival is a world-renowned music event, or that the Mahavishnu Orchestra was and is famous in the world of jazz. Its performance in 1974 accordingly has historical significance to both Mahavishnu Orchestra fans in particular and jazz fans generally. Also, the DVD and packaging have entertainment value. Plaintiff acknowledges such by stating he "has engaged, performed [sic], and thrilled audiences during live and

10

recorded performances, including performances in the Montreux Jazz Festival."
(Compl. ¶ 10.)

### a. Plaintiff's Picture

The cover of the DVD, which includes artwork and information about the contents of the DVD, contains expression protected by the First Amendment.  (Def.'s Ex. A.)  The same is true with the liner notes, which include artwork of the original concert posters and an essay about the event.  (*Id.*)  Use of a picture containing Plaintiff performing at this event is a part of this "work of artistic expression."  *Nichols*, 334 F. Supp. 2d at 956.  Accordingly, the use of a picture depicting Plaintiff performing at the Montreux Jazz Festival in 1974 cannot be the basis of a claim for misappropriation.

### b. Plaintiff's Performance

Unlike the use of Plaintiff's picture, the use of Plaintiff's performance raises a genuine issue of material fact regarding whether the First Amendment would preclude misappropriation liability.  As discussed above, the DVD is a "work of artistic expression."  *See Nichols*, 334 F. Supp. 2d at 956.  But as discussed above, there is a genuine issue of material fact whether Plaintiff consented to the DVD.  If he did not, then the First Amendment privilege would not apply because the DVD is a reproduction of his full performance.  *See Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. at 575.  Nevertheless, the Copyright Act preempts Plaintiff's appropriation claim regarding his performance on the DVD.

### 4. Copyright Preemption

11

The "Copyright Act is unusually broad in its assertion of federal authority."

*Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005). Section 301 of the Copyright Act

defines the preemptive scope of the Act, and provides, in relevant part:

> (a) [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether . . . published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C.A. § 301. A state common-law or statutory claim is preempted under § 301 if:

(1) the work is within the scope of the "subject matter of copyright," as specified in 17

U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any

exclusive rights within the scope of federal copyrights as set forth in 17 U.S.C. § 106.

*Murray Hill Publ'n, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 636 (6th Cir. 2001);

*Wrench LLC v. Taco Bell*, 256 F.3d 446, 453 (6th Cir. 2001). The copyright preemption

analysis comprises two parts, a "subject matter requirement" and a "general scope" or

equivalency requirement. *Wrench LLC*, 256 F.3d at 453. "Only if both requirements are

satisfied will the state law claim be preempted." *Murray Hill*, 264 F.3d at 636.

Moreover, the Sixth Circuit has emphasized that "preemption [under the Copyright Act]

as in any case of federal preemption of state law, is highly dependent upon the facts

presented and the claims actually pled by the parties."[3] *Id.* Accordingly, various federal

---

[3]Because Congress has not expressly identified which state law causes of action are preempted under § 301, the courts have been forced to engage in significant line drawing. *See Motown Record Corp. v. Hormel & Co.*, 657 F. Supp. 1236 (C.D. Cal. 1987) (finding that the "courts are now left to grapple with the decision of which state law causes of action are equivalent to rights covered by the Copyright Act"). Some

courts have decided whether state law actions based on the right of publicity are preempted by § 301 differently based on the circumstances in each case.  *Compare Landham,* 227 F.3d at 623 (right of publicity claim not preempted); *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) (same); *Brown*, 201 F.3d 654 (same); *with Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006) (statutory right of publicity claim preempted); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986) (right of publicity claim by players in the broadcast of their performances during games preempted by Copyright Act); *Romantics v. Activision Publ'g,* 574 F. Supp. 2d 758 (E.D. Mich. 2008) (Michigan right of publicity claim preempted); *Stanford v. Caesars Entertainment, Inc.*, 430 F. Supp. 2d 749 (W.D. Tenn. 2006) (Tennessee statutory right of publicity preempted)*.*

### 1. Plaintiff's Performance[4]

The court finds that under the particular facts and circumstances of this case and the allegations actually pleaded, Plaintiff's appropriation claim based on the use of his

_____

courts have considered the legislative history of the Copyright Act and concluded that it supports the conclusion that Congress did not intend to preempt common-law rights of privacy and publicity.  *See Brown v. Ames*, 201 F.3d 654, 659 n.2 (5th Cir. 2000) (citing H.R. Rep. 1476, 94th Cong. 2d Sess. 132 (1976)).  However, the text of the Act does not contain an express indication of what state law rights are not equivalent to copyrights, and this court will not attempt to discern the intent of Congress when the text provides sufficient guidance to the courts.

[4] The court will not address whether Plaintiff's appropriation claim based on the use of his image on the DVD cover may be distinct from the copyright protections afforded to the holder of the copyright of the pictures, George A. Braunschweig or Edouard Curchod, because it found any such claim barred by the First Amendment.

performance in the DVD is not distinct from the copyright protections afforded to the holder of the copyright of the recording, Montreux Sounds SA.

### a. Subject Matter Requirement

"The subject matter requirement of Section 301 is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act." *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004). Section 102 provides copyright protection to "motion pictures and other audiovisual works," "pictorial, graphic, and sculptural works," and "sound recordings." 17 U.S.C. § 102. Section 103 provides copyright protection to "compilations and derivative works." 17 U.S.C. § 103.

In *Landham*, the plaintiff claimed that the defendants violated his state law right of publicity by marketing a toy action figure based on a character which he played in the movie *Predator. Landham,* 227 F.3d at 621-22. The defendants argued that the right of publicity claim was preempted by § 301 of the Copyright Act because the claim involved a copyrighted work (i.e. the film). *Id.* at 623. The Sixth Circuit rejected the defendants' argument, holding that plaintiff's claim was not preempted by the Copyright Act. In *Landham*, the Sixth Circuit distinguished the plaintiff's claim for violation of his right of publicity from *Baltimore Orioles, Inc.,* stating:

> Unlike the baseball player-plaintiffs in *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.,* 805 F.2d 663 (7th Cir. 1986), Landham is not claiming the right of publicity in order to gain rights in the telecast of his performance, or to contest [the copyright holder's] right to create derivative works from its copyrighted work in general. Rather, he claims that the toy evokes his personal identity--an inchoate "idea" which is not amenable to copyright protection--to his emotional and financial detriment. Regardless of the merits of this claim, it does assert a right separate from those protected by the Copyright Act.

14

*Id.* at 623.  In *Romantics*, which involved the use of a copyrighted song in the popular video game, "Guitar Hero," the court distinguished *Landham*, finding that "Plaintiffs' claim is categorically different from the claim at issue in *Landham*, based on the plaintiff's 'personal identity,' which the [*Landham*] court described as 'an inchoate 'idea' which is not amenable to copyright protection' and as 'a right separate from those protected by the Copyright Act.'"  *Romantics*, 574 F. Supp. 2d at 767 n.4.  Instead, the court described the plaintiff's right of publicity claim as "based on a right that is protected by the Copyright Act - the right of a song's sound.'"  *Id.*  The court held plaintiffs' right of publicity claims were preempted by the Copyright Act.  *Id.* at 767.

Here, the work fits into general subject matter of Section 102 and 103 of the Copyright Act.  It was originally recorded as a "motion picture."  (Def.'s Ex. C.)  Montreux Sounds SA possesses the copyright to it.  (Roy Aff. ¶ 4; Def.'s Ex. A.)  As in *Baltimore Orioles*, Plaintiff is attempting "to contest [the copyright holder's] right to create derivative works from its copyrighted work in general."  *Landham,* 227 F.3d at 623.  Plaintiff is not asserting a claim based on "an inchoate 'idea' which is not amenable to copyright protection."  *Id.*  Instead, Plaintiff is asserting a claim based on the sale of a recording that happens to includes him.

### b.  Exclusivity Requirement

Section 106 describes the exclusive rights under the Act, including the right "to reproduce the copyrighted work in copies" and to "prepare derivative works based upon the copyrighted work."  17 U.S.C. § 106.  A state law claim infringes Copyright Act rights "if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights."  *Wrench LLC*, 256 F.3d at 456.  However, if the state

15

law claim requires an additional element "instead of or in addition to the acts of

reproduction, performance, distribution," then "there is no preemption, provided that the

extra element *changes the nature of the action so that it is qualitatively different from a

copyright infringement claim.*" *Id.* (emphasis added).

Plaintiff argues that the appropriation tort in Michigan contains extra elements.

(Pl.'s Resp. at 20.)  Indeed, significant commercial value in one's identity and exploitation

are not necessarily elements of a copyright infringement claim, and thus, the state-law

claims could be deemed to have extra elements.  However, based "upon the facts

presented and the claims actually pled by the parties," these extra elements do not

change the nature of the action in this case such that it is "qualitatively different from a

copyright infringement claim."  *Murray Hill*, 264 F.3d at 636; *Wrench LLC*, 256 F.3d at

456.  One of the exclusive rights of a copyright owner is to "reproduce the copyrighted

work."  17 U.S.C. § 106.  Plaintiff's claim is based on the premise that Defendant

reproduced the Plaintiff's performance in the form of a DVD without his permission.  *See

Laws*, 448 F.3d at 1144.  Although just because the underlying work is copyrighted, this

does not mean that a copyright holder can reproduce it in whatever form it wants without

being subject to state-law appropriation claims.  For instance, if the copyright holder had

licensed out a segment of the performance to a hypothetical defendant such as Gibson

to use in a commercial to advertise its guitars, then the outcome would almost certainly

be different.  But here, the DVD is a reproduction of the recording of the Montreux Jazz

Festival performance in 1974, the very subject of the copyright.  Thus, even though

Plaintiff's claim is couched as an appropriation of likeness claim, it is really a copyright

violation claim.  If Plaintiff believes he has a right in the recording and a right to receive a

16

share of the profits from its reproduction, the appropriate target of such a claim is the copyright holder.

## B. Section 43(a) of the Lanham Act

In general, "[t]he Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127).  Section 43(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  The Supreme Court has held that the "phrase 'origin of goods' . . . refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37.

Count II of Plaintiff's complaint is delineated as a "false designation of origin" claim.  Any claim based on "false designation of origin" is foreclosed by *Dastar*.  *Id.*  No reasonable juror could be confused about the identity of the producer of the tangible DVD product that is offered for sale.  It is clear from the cover that the Executive

17

Producer is Montreux Sounds SA and that it is an "Eagle Eye Media release."  (Def.'s Ex.
A.) Plaintiff's picture on the back, coupled with the consent statement, cannot confuse a
buyer into thinking that Plaintiff was the producer of the tangible DVD product.

      Even though delineated as a "false designation of origin" claim, Plaintiff seems to
be arguing a "false endorsement" claim.  Plaintiff's complaint alleges that the use of
Plaintiff's "image, likeness and/or performance rights . . . is likely to deceive and has
deceived fans and prospective customers/audience members into believing that the
Defendant's products are endorsed by the Plaintiff."  (Pl.'s Compl. ¶ 37.)  Plaintiff further
argues this claim in his response.  (Pl.'s Resp. at 11-13.)  The court will address
Plaintiff's claim as a "false endorsement" claim, noting that "[a] false designation of origin
claim brought by an entertainer under § 43(a) of the Lanham Act in a case such as this is
equivalent to a false association or endorsement claim, and the 'mark' at issue is the
plaintiff's identity."  *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 926 (6th Cir. 2003).

      "False endorsement occurs when a celebrity's identity is connected with a product
or service in such a way that consumers are likely to be misled about the celebrity's
sponsorship or approval of the product or service."  *Id.*  Typically, "the controlling issue is
likelihood of confusion," and an eight-factor test is used to determine "likelihood of
confusion."  *Id.*  However, when the First Amendment is implicated, a different test
applies.  *ETW Corp.,* 332 F.3d at 926.  "[W]here the defendant has articulated a
colorable claim that the use of a celebrity's identity is protected by the First Amendment,
the likelihood of confusion test is not appropriate because it fails to adequately consider
the interested protected by the First Amendment."  *Id.*  Instead, the Sixth Circuit applies
the Second Circuit's *Rogers* test, which holds that "the Lanham Act should be applied to

18

artistic works only where the public interest in avoiding confusion outweighs the public interest in free expression." *Id.* The fact that some members of the public "would draw the incorrect inference" is not enough. *Id.* at 937. Moreover, "[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." *Dastar*, 539 U.S. at 32-33.

As discussed above, the court finds that Defendant has articulated a colorable First Amendment defense. The *Rogers* test as articulated in *ETW Corp.* thus applies. *ETW Corp.,* 332 F.3d at 926. Regarding consumer confusion, the basis of Plaintiff's claim is the use of Plaintiff's image below the words, "Now, with the consent of the festival and the artists, Eagle Vision is making these concerts available on DVD for the first time." (Def.'s Ex. A.) Plaintiff argues that this gives the consumer the impression that he endorses the DVD, which would confuse the consumer because it is not true. The court does not find this argument persuasive. Most people understand that pictures on the outside of a DVD cover are ordinarily meant to convey something about the content, not necessarily to demonstrate endorsement. The words of the "consent" do not change the analysis. When read with the remainder of the paragraph, it is clear that the statements are referring to the whole collection of performances over the more than thirty-year history of the festival. The full text provides:

> Founded in 1967, the MONTREUX JAZZ FESTIVAL has established itself
> as one of the most prestigious annual music events in the world. The
> extraordinary list of artists who have played there is drawn from across the
> musical spectrum and from around the world. Now, with the consent of the
> festival and artists, Eagle Vision is making these concerts available on
> DVD for the first time.

(Def.'s Ex. A.)  Thus, in context, the statement is referring all of the concerts and not directly to Plaintiff or even the Mahavishnu Orchestra.  Even though Plaintiff was an artist at the festival, and the statement thus erroneously implies his consent, or so it is alleged, the court finds the likelihood of confusion regarding this statement to be *de minimis*.  The statement "indicates at most that some members of the public would draw the incorrect inference."  *Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2d Cir. 1989).  This is not enough. *ETW Corp.,* 332 F.3d at 937.  Applying the Lanham Act to this case would be stretching it "to cover matters that are typically of no consequence to purchasers."  *Dastar*, 539 U.S. at 32-33.

The likelihood of confusion arising out of the picture and statement regarding consent do not outweigh "the public interest in free expression."  *ETW Corp.,* 332 F.3d at 926.  "'[M]ovies, plays, books and songs are all indisputably works of artistic expression and deserve protection.'" *Id. (quoting Rogers,* 875 F.2d at 997).  As noted above, the Montreux Jazz Festival is a world-renowned music event, and the Mahavishnu Orchestra's performance in 1974 has concomitant musical, cultural, and historical significance to both its own fans and jazz fans more generally.  Moreover, the DVD has entertainment value and represents the artistic expression of the videographers, layout artists, and others who lend their talents and artistic expressions to the making of a concert recording.  Thus, the relatively slight public interest in avoiding confusion in this instance is not outweighed by the greater public interest in free expression of this artistic work.

20

Accordingly, Plaintiff's claim based on appropriation is foreclosed as a matter of law based on the First Amendment and the Copyright Act, and Plaintiff's claim based on false endorsement is foreclosed as a matter of law based on the First Amendment.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Judgment on the Pleadings, Motion for Summary Judgment in the Alternative" [Dkt # 8] is GRANTED.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  September 10, 2009
I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 10, 2009, by electronic and/or ordinary mail.


 S/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\09-11704.ARMSTRONG.SJ.Appropriation.LanhamAct.npk.wpd